The bill states that the plaintiff employed the defendants in Kentucky to convey a quantity of salt in barrels to this place on freight; that he advanced some money; that they could have arrived in January, when the market was good, but neglected to do so until February, when the price had fallen, and he was much injured thereby; that the defendants are insolvent, and upon their arrival at Nashville would not deliver the salt, except a part of it, insisting that they had a right to detain it till paid the freight. This bill seeks satisfaction for the loss he has sustained, and that it may be set off against the freight, and the balance be paid to him. An attachment was obtained by order of a judge, and the salt was seized by virtue thereof, and stored by the sheriff in Nashville. All these statements are fully answered and denied, or avoided in the answer, which *Page 204 
prays a dismission of the bill. And it is read for the purpose of grounding a motion, as answers are read to ground motions for dissolving injunctions. The bill is not yet replied to, nor set for hearing. It is moved further, upon reading the answer, to discharge the attachment and restore the proceeds of the salt which has been sold. The Court is now to decide upon these motions. An attachment is a statutory process. It will not lie at law where the defendant may be arrested by ordinary process. An attachment in equity is the same process, and expressly upon the same footing. 1801, c. secs. 2 3. It is leviable on the goods of the defendant, to compel him to give bail, not to compel him to give bond to perform the decree. Here the plaintiff's attempt is to levy on his own goods, to enforce the defendants to give bail. The effect is to take from them the possession which the law gives them, to enforce payment from the plaintiff for services performed concerning the goods, and to release the plaintiff from the lien upon his goods, unless they will give him a security to pay what he may recover against them an obligation which the law did lay upon them when it created the lien. The law is made to speak thus: You shall have a lien, but you shall resign it unless you will give security to the amount of the goods. At one blow this overturns all liens, for who will rely upon them on such terms? With them will be overturned the faith and confidence which liens inspire. Should not the defendant give bail, the lien is gone; for that is gone when the possession is parted with. It is better to give up the lien than to submit to such terms. This will become one of the means put in practice to produce the result: give bail; take less than 1 owe, or take nothing. A lien's given by the law to supply the defect of personal responsibility in the employer, yet here the person employed is compelled to rely upon that alone. That a lien is created by the course of trade or by a special *Page 205 
agreement, that this is a case where it is created by the course of trade and lost by parting with the possession, is proved abundantly by the cases, namely. 1 Atkins, 134, 229, 235, 236; 2 Atk. 234; 1 Eq. Ca. Ab. 324; Cro. C. 271; 3 Bur. 1313;, 1 Bl. 653; Doug. 105; 1 E. 5; 1 Ves. junior, 317. The plaintiff could not recover in trover or detinue, for the lien would be an answer to the action. Why then overlook the lien by a bill in equity? Such bill would not lie before the Act of 1801. c. 6. By that act it is authorized, in case of debt contracted in another State, a judgment obtained there, and no property there to satisfy it. That act also authorizes an attachment in lieu of sequestration. That was a process to compel appearance to a bill which is sustainable by the ancient rules of equity. Here the bill is brought for the sake of the process; not the attachment substituted in lieu of the sequestration, in aid of the bill, proper in itself antecedent to the Act of Assembly. It was not the intent of this clause of the act to introduce a new bill, but new process in aid of an old bill. This bill would not have been sustained had it been filed before the Act of 1801. It would have been answered by saying, you have a plain remedy at law. Bring trover or detinue or replevin; this bill was then, and still is liable to this final objection. If the defendant have no lien, these actions will lie; if he has, you can not take it away by any sort of action whatsoever. It will not be sufficient, in order to sustain the bill, to say, it is brought to have the benefit of the attachment. This is a perversion of the act; it is putting the cart before the horse. We are all satisfied that this process, as used in the present instance, is illegal; but can it now be quashed, in like manner as an injunction is dissolved, upon the coming in of the answer? The latter is granted and kept up till the defendant's conscience be sifted by the answer. The attachment is not for any such purpose. It is to compel appearance. An answer admits the *Page 206 
legality of the process by which the defendant is called on to answer. Can the defendant say, I was called on by proper process; I was bound to answer; I have answered; and yet say, now I have answered, I will insist that I was not called on by proper process, or not by legal process. A defence in chief at law is a waiver of all prior objections, and it is equally so in equity. Appearance and pleading over cures the irregularity of process both at law and equity. The defendant can not go back any more than at law; he can not plead the general issue and then plead in abatement of the writ. The parties must now go on to a hearing. Should the bill be then dismissed for want of equity, the attachment will go with it.